IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY STEPHENS, | : | CIVIL ACTION NO. **3:CV-07-0412** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN JAMES T. WYNDER, et al., | : | |
| | : | |
| Respondents | : | |

--------------------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| GREGORY STEPHENS, | : | CIVIL ACTION NO. **3:CV-07-0706** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN JAMES T. WYNDER, et al., | : | |
| | : | |
| Respondents | : | |

## REPORT AND RECOMMENDATION

## I. Background.

_____On March 5, 2007, Petitioner, Gregory Stephens, an inmate at the State Correctional

Institution at Dallas, Dallas, Pennsylvania, ("SCI-Dallas") filed, *pro se*, a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of

Pennsylvania. (Civil No. 07-0412, M.D. Pa.). Petitioner paid the filing fee. On January 23, 2007,

Petitioner Gregory Stephens filed, *pro se*, a petition for writ of habeas corpus pursuant to 28 U.S.C.

§ 2254, in the United States District Court for the Eastern District of Pennsylvania (Civil No. 07-

0295 (E.D. Pa.)), which is identical to his habeas petition he filed in the Middle District of

Pennsylvania.  Petitioner paid the filing fee in his Eastern District of Pennsylvania case.[1]

On April 11, 2007, the District Court in the Eastern District of Pennsylvania issued an Order transferring Petitioner Stephens' case filed in that District (*i.e.*, Civil No. 07-0295, E.D. Pa.) to the Middle District of Pennsylvania. This transferred habeas petition of Petitioner was received by the Middle District of Pennsylvania on April 16, 2007, and was docketed to Civil No. 07-0706, M.D. PA.  Both of Petitioner's habeas cases have been assigned to the undersigned for pre-trial matters pursuant to 28 U.S.C. § 636(b)(1)(B).

Since both of Petitioner's cases are identical  habeas petitions challenging his 1983 Dauphin County Court of Common Pleas ("CCP") second degree murder conviction and life sentence, we shall recommend that his case Civil No. 07-0706, M.D. Pa., be consolidated with his case Civil No. 07-0412, M.D. Pa., and that the 07-0706 case be closed.  In fact, both habeas petitions have the exact same Exhibit A attached to them, which consists of a copy of the 1983 Pennsylvania Criminal Complaint charging Petitioner with murder and a copy of one page of his CCP criminal docket sheet.   (Doc. 1, Ex. A, cases Nos. 07-0412 & 07-0706).

Rule 42(a) of the Federal Rules of Civil Procedure states that:

> When actions involving a common question of
> law or fact are pending before the court, it
> may order a joint hearing or trial of any or all
> the matters in issue in the actions consolidated;
> and it may make such orders concerning proceedings
> therein as may tend to avoid unnecessary costs
> or delay.

---

[1]In both of Petitioner's cases, he filed *in forma pauperis* motions and then paid the required filing fees.  Also, in his *in forma pauperis* Affidavit filed in the Middle District of Pennsylvania, the form is captioned Eastern District of Pennsylvania.

Both of Petitioner's habeas petitions have been reviewed, and we find that they involve common questions of law and fact.  As stated, Petitioner's habeas petitions are identical. Accordingly, pursuant to Rule 42(a), we shall recommend that the above cases be ordered consolidated and that the matter proceed under Civil Action Number 3:CV-07-0412.

We will recommend that the Clerk of Court be directed to consolidate Civil Action Number 4:CV-07-0706 into Civil Action No. 3:CV:07-0412 and to close the file in Civil Action No. 3:CV-07-0706.[2]

Also, in the Eastern District of Pennsylvania case only, Petitioner filed a Motion for Appointment of Counsel, an Affidavit and support Brief.  This Motion and supporting documents have  been docketed in the Middle District of Pennsylvania case, No. 07-0706 as Doc. 2.  Since Petitioner did not file such a Motion in his Case No. 07-0412, we will address it in this consolidated Report and Recommendation.[3]

## II. Claims of Habeas Petition.

As stated, in both habeas petitions, Petitioner challenges his 1983 second degree murder conviction in the Dauphin County Court of Common Pleas ("CCP").  Petitioner raises the following grounds: (1)  Insufficient evidence to prove guilt beyond a reasonable doubt; and (2) Ineffective

---

[2]The only difference in the 07-0412 habeas petition from the 07-0706 habeas petition is that in the typed name of the court, it was handwritten in the 07-0412 case "MIDDLE" over the typed word EASTERN.  Since both habeas petitions are identical, we shall only refer to the petition filed in Civil No. 07-0412.

[3]Since we find Petitioner's habeas petition untimely under the AEDPA and shall recommend that it be dismissed as such, we shall recommend that his Motion for Appointment of Counsel be dismissed as moot.

assistance of counsel, in that trial counsel failed to raise the constitutional violations that the Commonwealth used improper jury practices when it discriminated against African-American jurors in its exercise of peremptory jury challenges during *voir dire, i.e.*, denial of right to fair and impartial jury. As to Claim #1, Petitioner states that he was charged with murder generally, and since he was not charged with any felony and not charged with engaging in any felony when the death of the victim occurred, the jury could not have returned a verdict of second degree murder, *i.e.* felony murder. Petitioner states that his Ex. A criminal complaint shows that he was only charged with murder generally.[4] Thus, Petitioner claims that he is actually innocent of second degree murder. (Doc. 1, p. 9). As Claim #2, Petitioner raises a *Batson*[5] challenge to his jury selection and states that the Commonwealth used its peremptory challenges to strike 6 out of the only 7 potential African American jurors on his jury panel solely based on their race. As a result, Petitioner states that his jury of eleven (11) white jurors and only one (1) African American juror, and two (2) white alterative jurors, denied him his Sixth Amendment right to a fair and impartial jury trial. Petitioner claims that his trial and appellate counsel failed to object at trial and failed to raise this claim on appeal. (*Id.*, p. 10).[6]_____

_____

[4]As noted above, the Exhibit A attached to both of Petitioner's habeas petitions, cases Nos. 07-0412 and 07-0706 are identical.

[5]*See Batson v. Kentucky*, 476 U.S. 79 (1986); *U.S. v. DeJesus*, 347 F.3d 500, 505 (3d Cir. 2003) ("the Equal Protection Clause must prevent prosecutors from using peremptory strikes to remove jurors on the basis of race.").

[6]Petitioner also writes portions of his two claims on the reverse sides of pages 9-11 of his habeas petition.

_____Before serving the Petition on Respondents and addressing the Petitioner's claims, on March 14, 2007, we issued an Order and directed Petitioner to submit to the Court, within ten (10) days of the date of the Order, copies of all of his state court appeals and the state court decisions, opinions, and orders regarding both his direct and collateral appeals, along with the filing dates thereof.[7]  (Doc. 4).  The Court indicated that it would then determine if the Petitioner's habeas petition has been timely filed under the AEDPA[8] and if his instant claims have been exhausted in the state courts.[9]

---

[7]The amended provisions of 28 U.S.C. § 2244(d)(1) impose limitations on the right to pursue federal habeas relief.  The amendments impose a one-year statute of limitations for § 2254 habeas petitions. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998).  There are four potential starting points for determining when the statute of limitations begins to run.  The applicable period in the instant matter is the date that the AEDPA became effective, since Petitioner's judgment of conviction became final prior to the AEDPA, on or about August 20, 1986 (90 days after Pennsylvania Supreme Court denied his Petition for Allowance of Appeal with respect to his direct appeal of his conviction.  *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003); *Burns v. Morton*, 134 F. 3d 109, 111 (3d Cir. 1998).  Any time devoted to pursuing a properly filed application for state post-conviction relief or other collateral relief is excluded from the limitations period.  28 U.S.C. § 2244(d)(2); *Merritt, supra*.

[8]The Third Circuit Court of Appeals, in *Holden v. Mechling*, 2005 WL 1219860 (3d Cir.), found that the District Court could *sua sponte* raise the AEDPA's statute of limitations and could summarily dismiss a § 2254 habeas petition as untimely after Petitioner is afforded notice and an opportunity to be heard.  *See also U.S. v. Bendolph*, 409 F.3d 155 (3d Cir. 2005);  *Day v. McDonough*, 126 S.Ct. 1675, 1683 (2006).  We thus gave Petitioner Stephens notice and an opportunity to be heard regarding whether his habeas petition is timely under the AEDPA.

[9]The habeas statute requires a prisoner to exhaust his claims in state court before seeking relief from federal courts.  28 U.S.C. § 2254(b)(1)(A); *see also Landano v. Rafferty*, 897 F.2d 661, 668 (3d Cir. 1990).  It is well settled in the Third Circuit that the Court has discretion to raise procedural issues, such as exhaustion of state court remedies, in habeas cases, and it may do so *sua sponte*.  *See Sweger v. Chesney*, 294 F.3d 506, 520-521 (3d Cir. 2002), *cert. denied*, 538 U.S. 1002 (2003).

After being granted an extension of time, Petitioner submitted copies of his state court records on April 12, 2007.  (Doc. 7).  We gave Petitioner notice and an opportunity to address the statute of limitation ("SOL") issue.

Thus, by the Court's Order, we sought to determine the timeliness of Petitioner's present Habeas Corpus Petition, and to determine if the one-year statute of limitation expired between the time period beginning with the effective date of the AEDPA to the date of the filing of the present habeas petition on January 23, 2007.[10]  We did not direct the Respondent District Attorney of Dauphin County, Pennsylvania, to respond to the habeas petition with respect to the timeliness issue since, based on Petitioner's state court records (Doc. 7), it is clear that his one-year AEDPA statute of limitations ("SOL") has expired.

### III.  State Factual and Procedural History.

Since the Pennsylvania Superior Court, in its September 12, 1989 Memorandum affirming the CCP's Order denying Petitioner's PCHA Petition, has detailed the factual history of Petitioner's case, we shall quote it as follows:

The Commonwealth aptly presented the facts as follows:

On Monday, March 21, 1983, at approximately 8:19 p.m., uniformed police officers of the Harrisburg Police Department responded to 1322 Susquehanna Street, Harrisburg, Dauphin County, Pennsylvania. Upon their arrival, the police observed the body of a white male lying face down on the living room floor.  The individual was nude, but covered with a gray

---

[10]We use the date of January 23, 2007, when Petitioner filed his habeas petition with the Eastern District of Pennsylvania, as the filing date of Petitioner's habeas petition for present purposes  since this was the earliest date of both of his petitions.

quilt.

The victim was lying on top of a purple bedspread with two pillows on each side of his head.  A large pool of blood had formed under the victim's face.   Blue jeans, a shirt, and underclothing were found folded on a nearby sofa.  Also found in the living room was an open jar of Vaseline, a pack of Marlboro cigarettes, a kerosene heater, several beer cans, and a flesh colored dildo.  The telephone had also been disconnected.

The police learned that certain items of personal property of the victim were missing.  These items had been in the house the last time the victim had been seen alive.  There were no apparent signs of a struggle.

The victim was killed with the use of a blunt object.  Six wounds to the victim's head caused severe lacerations, and the wound that was the cause of death separated the upper and lower portions of the left ear and was continuous with a fracture at the base of the skull.  Expert testimony established that the victim was lying face down on the floor, at the time the fatal blow was struck.

Through investigation, police discovered that a black male known as "[M]idnight" had been the last person to be in the company of the victim. [Appellant is known as "Midnight."]. On March 22, 1983, at approximately 3:00 p.m., Appellant was brought to police headquarters for questioning.  He was advised of his constitutional rights and subsequently signed a written waiver.  Appellant first told the police that he had been at the victim's house on March 20, 1983, but when he left everything was "OK".  However, Appellant later confessed to removing the victim's personal property and killing him.

Appellant had initially met the victim two weeks prior to the homicide.  Appellant did not have any money and was without a job when he had first come into contact with the victim.  He engaged the victim with the purpose of obtaining money and agreed to engage in a homosexual encounter to that end.

On the night of the killing, Appellant had gone to the victim's house.  At the time of this second encounter, Appellant was again without any money. . . .  Appellant told police that he wanted to get some clothes in order to impress his girlfriend in Baltimore.  Although the police recovered the victim's personal property, Appellant sold the items and used the money from the sales to purchase clothing.  Finally, Appellant admitted removing the victim's wallet, but denied going through it.  Subsequently, appellant was charged with murder.

Commonwealth's brief at 3-5.

Following a trial by jury, appellant was found guilty of second degree murder.  Post-trial motions were filed and denied, and appellant was sentenced to life imprisonment.  On direct appeal, judgment of sentence was affirmed by this Court, and our Supreme Court denied appellant's petition for allowance of appeal.  On March 15, 1988, appellant filed a pro se PCHA petition.  On Jul 2 7, 1988, new counsel filed a supplemental PCHA petition which was denied by the trial court without hearing.

(Doc. 7, Ex. 2 , pp. 2-3).

## IV.  Discussion.

The Court's preliminary review of the habeas petition reveals that on May 20, 1986, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal regarding his direct appeal of his judgment of sentence, which was affirmed by the Pennsylvania Superior Court on July 19, 1985.   (Doc. 1, pp. 5-6).  Petitioner did not file a Petition for Writ of *Certiorari* with the United States Supreme Court. (Doc. 1, p. 6).  Petitioner's judgment of conviction became final on or about August 20, 1986 (90 days after the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal with respect to his direct appeal of his conviction).

As this Court stated in *Shipe v. Erickson*, 2005 WL 2614932, * 1 (M.D. Pa), "a one year grace period existed for applicants whose convictions became final before the April 23, 1996 effective date of the AEDPA."(citing *Burns v. Morton*, 134 F. 3d 109, 111 (3d Cir. 1998)).    Petitioner Stephens' conviction became final on August 20, 1986, well before the effective date of the AEPDA. Thus, Petitioner had to file his federal habeas petition on or before April 23, 1997.  As stated, Petitioner first filed his federal habeas petition on January 23, 2007, almost ten (10) years after this AEDPA SOL expired.

Petitioner filed a direct appeal of his judgment of conviction with the Pennsylvania Superior Court, and his conviction was affirmed on July 19, 1985.  He then filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, and it was denied on May 20, 1986.  (Doc. 1, pp. 5-6).  Petitioner filed a collateral appeal with the CCP *via* a Post Conviction Hearing Act ("PCHA") Petition[11], which was denied by the CCP on October 31, 1988.[12]  On September 21, 1989, the Pennsylvania Superior Court affirmed the CCP's denial of Petitioner's PCHA Petition.  (Doc. 7, Ex. 2).

According to the Superior Court, Petitioner filed his PCHA Petition, *pro se*, on March 15, 1988, and on July 27, 1988, his new counsel filed a supplemental PCHA Petition, which was denied by the CCP (October 31, 1988) without hearing.  (*Id.*, p. 3 and Doc. 7, Ex. 3).  Petitioner

---

[11]The PCHA was the old means of collateral review in Pennsylvania, which was later amended to the Post Conviction Relief Act ("PCRA").  (Doc. 7, Ex. 2, p. 3, n. 2).  Presently, the PCRA is the exclusive means of a Pennsylvania state defendant to seek collateral review of his judgment of conviction.

[12]Petitioner incorrectly states that the CCP denied his PCHA Petition on "October 31, 1998." (Doc. 1, p. 7).  *See* Doc. 7, Ex. 2.

filed a Petition for Allowance of Appeal regarding the denial of his PCHA Petition with the Pennsylvania Supreme Court, and it was denied on May 8, 1990. (Doc. 1, p. 7). The record indicates that, for over fourteen (14) years, Petitioner filed no more appeals regarding his second degree murder conviction and life sentence until he untimely filed, on September 16, 2004, his second collateral appeal *via* a PCRA Petition with the CCP. (Doc. 7, Ex. 4). Petitioner states that on October 13, 2004, the CCP appointed counsel with respect to his PCRA Petition, and that his counsel then filed a no merit letter with the Court. (Doc. 1, p. 7).

The record reveals that the Commonwealth responded to Petitioner's PCRA Petition on March 25, 2005, and argued that Petitioner was ineligible for relief in his PCRA Petition since he was clearly untimely. (Doc. 7, Ex. 5). Petitioner states that on January 7, 2005, the CCP dismissed his PCRA Petition as untimely. (Doc. 1, p. 7). Petitioner appealed, and on October 6, 2005, the Pennsylvania Superior Court affirmed the dismissal of his PCRA Petition by the CCP. (*Id*.). Petitioner filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, which was denied on May 1, 2006. (*Id*., p. 8).[13]

---

[13]As noted, the exclusive means by which criminal Defendants in Pennsylvania can obtain collateral relief is a PCRA Petition. The Court in *McCabe v. Com. of PA*, 419 F. Supp. 2d 692, 695 (E.D. Pa. 2006), stated:

> The Pennsylvania Post-Conviction Relief Act (PCRA) provides for "an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. § 9542. The PCRA is the exclusive means in Pennsylvania by which defendants may obtain collateral relief. *Id*.

As stated, Petitioner then filed his federal habeas petition with the Eastern District of Pennsylvania on January 23, 2007.

Accordingly, Petitioner's judgment of sentence became final on August 20, 1986, and Petitioner's AEDPA started to run on April 23, 1996.  Petitioner's SOL ran from April 23, 1996, until April 23, 1997, uninterrupted, since Petitioner did not have any properly filed application for state post-conviction or other collateral review pending during this entire year as defined by § 2244(d)(2).[14]  That is to say, Petitioner's SOL under the AEDPA expired on April 23, 1997, since

---

> To be eligible under the PCRA, a petition must be filed within one year of the conclusion fo direct review, or at the expiration of the time period for seeking such review.  42 Pa.C.S. § 9545.

The *McCabe* Court also stated:

> The Supreme Court of Pennsylvania has found that the PCRA's time limitations are jurisdictional, meaning they "go to a court's right or competency to adjudicate a controversy."  *Commonwealth v. Cruz*, 578 Pa. 325, 335, 852 A.2d 287 (Pa. 2004) ("the time for filing a PCRA petition can be extended only to the extent that the PCRA permits it to be extended, i.e., by operation of one of the statutorily enumerated exceptions to the PCRA time-bar"); *Commonwealth v. Fahy*, 558 Pa. 313, 737 A.2d 214, 222 (1999).  For this reason, a court may only grant an extension to the time limitation pursuant to the statutory exceptions; equitable tolling may not be applied to petitions brought under the PCRA.  *Id.*

*Id.* at 696.

[14]Section 2244(d)(2) provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation . . ." 28 U.S.C. § 2244(d).

Petitioner had no properly filed state court appeals, either direct or collateral, pending during this time, *i.e.* from April 23, 1996 to April 23, 1997.

Petitioner's SOL was not tolled on September 16, 2004, when he untimely filed his second collateral appeal through his PCRA petition with the CCP, and it was not tolled until May 1, 2006, when the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal. (Doc. 1, p. 8). As noted, the PCRA's time limitations are jurisdictional, and the Pennsylvania Courts found that Petitioner's September 16, 2004 PCRA Petition was untimely. Petitioner's SOL had already fully expired long before he even filed his September 16, 2004 PCRA Petition. Thus, on January 23, 2007, when Petitioner first filed his § 2254 habeas petition in federal court, he had no time remaining on his SOL.

We find that Petitioner's one-year AEDPA SOL has expired and that this consolidated Habeas Petition should be dismissed as untimely. Petitioner seems to contend that his habeas petition was timely simply because it was filed on January 23, 2007, which was within 12 months of the Pennsylvania Supreme Court's May 1, 2006 Order denying Petitioner's Petition for Allowance of Appeal with respect to the denial of his untimely PCRA petition. (Doc. 1, p. 8). Petitioner fails to account for all the time that expired on his SOL between the time after his SOL commenced to run on April 23, 1996, when he had no state court appeals whatsoever pending, until one year later on April 23, 1997. It is of no moment in this case, even if Petitioner did timely file his second collateral appeal *via* his September 2004 PCRA petition, and it is of no moment even if there was tolling until the time after his September 2004 PCRA petition was denied by the Pennsylvania Supreme Court's May 1, 2006 Order until he filed his habeas petition with this Court,

simply because Petitioner's AEDPA SOL had already expired on April 23, 1997.

Petitioner states in his habeas petition that he was mentally incompetent due to breakdowns caused by depression in the years 1992, 1995 and 2004, and that this prevented him from timely filing his federal habeas petition.  (Doc. 1, p. 8).  Specifically, Petitioner states as follows:

> I had become mental (sic) incompetent as a result of suffering from several mental breakdowns caused by severe mental depression in the years - 1992; 1995 and 2004 during the statutory habeas corpus filing period which prevented the Petitioner from exercising his right to file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

(Doc. 1, p. 8).

Even if Petitioner had mental breakdowns in 1992, 1995 and 2004, this would not constitute an excuse for not timely filing his present habeas petition.  As for the years 1992 and 1995, the first two years in which Petitioner states that his mental breakdowns and mental incompetence prevented him from timely filing his federal habeas petition, these years are irrelevant.  Petitioner's SOL did not start to run until April 23, 1996.  *See Burns, supra.*  As for the final year, 2004,  in which Petitioner claims that his mental incompetence prevented him from timely filing his habeas petition, this year is also irrelevant since Petitioner's SOL had already long expired seven (7) years earlier, *i.e.* on April 23, 1997.

We thus find that the Petitioner's AEDPA statute of limitations has expired.  As mentioned, Petitioner has been given an opportunity to address the timeliness issue.  Therefore, the Habeas Petition is ripe for the Court's consideration as to whether it is timely.

Prior to considering the merits of Petitioner's habeas claims, we shall review the exhibits

13

submitted by Petitioner(Doc. 7), which we find to be sufficient, in order to determine if Petitioner's Habeas Petition is timely under the AEDPA.  If the Habeas Petition is not timely, we see no need to serve Petitioner's Habeas Petition on Respondents for their response regarding the merits of his underlying habeas claim.[15]

We now give preliminary consideration to the Petition pursuant to Rule 4, Rules Governing Section 2254 Cases in the United States District Courts, and we find that the SOL has expired.

The Superior Court affirmed the Petitioner's judgment of sentence on July 19, 1985. Petitioner then timely filed a Petition for Allowance of Appeal with the Pennsylvania Supreme Court, and on May 20, 1986, the Pennsylvania Supreme Court denied Petitioner's Petition for Allowance of Appeal.  (Doc. 1, pp. 5-6).  Petitioner did not file a writ of *certiorari* with the United States Supreme Court.  Thus, as noted above, Petitioner's judgment of sentence became final on or about August 20, 1986.[16]  We have added the 90 days in which Petitioner could have filed a writ of *certiorari* with the United States Supreme Court regarding his direct appeal of his judgement of conviction.  *See Payne v. Grace*, 2007 WL 709307, * 2 (W.D. Pa.)(citing *Swartz v. Meyers*, 204 F.

---

[15]As discussed below, we find that Petitioner's one-year AEDPA statute of limitations ("SOL") expired in this case prior to the filing of the instant Habeas Petition.

[16]As this Court stated in *Shipe v. Erickson*, 2005 WL 2614932, * 1 (M.D. Pa.):

"Thus, under the plain terms of § 2244(d)(1)(A), the period of time for filing a habeas corpus petition begins to run when the direct appeal is concluded. *See Harris v. Hutchinson,* 209 F.3d 325, 327 (4th Cir.2000) ("[T]he AEDPA provides that upon conclusion of *direct review* of a judgment of conviction, the one year period within which to file a federal habeas corpus petition commences, but the running of the period is suspended for the period when state post-conviction proceedings are *pending* in any state court.") (emphasis in original)."

3d 417, 419 (3d Cir. 2000).

Petitioner filed a collateral appeal with the CCP *via* a Post Conviction Hearing Act (PCHA) Petition. (Doc. 7, Ex. 2, p. 3). Petitioner's PCHA Petition was denied by the CCP on October 31, 1988. (Doc. 1, p. 7). *See* Doc. 7, Ex. 2. On September 21, 1989, the Pennsylvania Superior Court affirmed the CCP's denial of Petitioner's PCHA Petition. (Doc. 7, Ex. 2). Petitioner filed his PCHA Petition, *pro se*, on March 15, 1988, and on July 27, 1988, his new counsel filed a supplemental PCHA Petition, which was denied by the CCP (October 31, 1988) without hearing. (*Id.*, p. 3 and Doc. 7, Ex. 3).

Petitioner filed a Petition for Allowance of Appeal regarding the denial of his PCHA Petition with the Pennsylvania Supreme Court, and it was denied on May 8, 1990. (Doc. 1, p. 7). The record indicates that, for over fourteen (14) years, Petitioner filed no more appeals regarding his second degree murder conviction and life sentence until he improperly filed, on September 16, 2004, his second collateral appeal via a PCRA Petition with the CCP. (Doc. 7, Ex. 4).

Petitioner had no state court appeal, either direct or collateral, pending from April 23, 1996 through April 23, 1997. As stated, the full one year of Petitioner's AEDPA SOL ran during this time period.

As this Court stated in *Shipe v. Erickson*, 2005 WL 2614932, * 2 (M.D. Pa.):

> [R]uling by the Third Circuit held that an untimely PCRA petition
> was not a properly filed action for purposes of the AEDPA and
> therefore did not toll the statute of limitations for the filing of a
> federal habeas petition. *Merritt v Blaine*, 326 F.3d 157
> (3d Cir. 2003).

15

> Recently, in *Schleueter v. Varner*, 384 F.3d 69, 2004 WL 2035180 (3d Cir. Sept. 14, 2004), the Third Circuit established that a state court ruling dismissing a PCRA petition as untimely was controlling for purposes of a determination under *Merritt*. The Court of Appeals added that toling was not permissible "merely because petitioner unsuccessfully has sought the right to appeal *nunc pro tunc* years after his unexercised right to file a timely direct appeal has expired." *Id*. at p. 6.

The records indicate that Petitioner filed another state court appeal, *i.e.* a collateral appeal *via* a PCRA Petition, on September 16, 2004, with respect to his challenged conviction and sentence for his 1983 second degree murder conviction. Petitioner's PCRA Petition was not timely filed. As discussed, it is not relevant whether Petitioner had properly filed another state court appeal on September 16, 2004. Petitioner's SOL began to run on April 23, 1996, and his SOL expired on April 23, 1997. *See Shipe, supra* at *2. As stated, we find no tolling of his SOL for the period of April 23, 1996 through April 23, 1997, since Petitioner had no state court appeals pending. This amounted to one full year that had already run on Petitioner's SOL well before he even flied his second collateral appeal with his September 2004 PCRA Petition.

Petitioner's SOL began to run on April 23, 1996. At this time, Petitioner had one full year left on his SOL to timely file his federal habeas petition. Petitioner offers no reason as to why he delayed filing his habeas petition until January 23, 2007. Petitioner's federal habeas petition was due within one year of April 23, 1996, or by April 23, 1997. Thus , by our calculation, Petitioner's January 23, 2007 habeas petition filed with federal Court was filed almost ten years after his AEDPA SOL had expired, *i.e.* 9 years and 9 months late.

We disagree with Petitioner (Doc. 1, p. 8), and find that his alleged mental incompetence during the years 1992, 1995 and 2004 does not require an additional tolling of his AEDPA SOL. Petitioner seems to indicate that he had one year to file his habeas petition after his Petition for Allowance of Appeal, with respect to his PCRA petition, was denied by the Pennsylvania Supreme Court on May 1, 2006.  Petitioner seems to contend that he is entitled to an additional tolling of his SOL well after it had expired on April 23, 1997, until one year after the May 1, 2006 Order of the Pennsylvania Supreme Court.  As stated, even if Petitioner was mentally incompetent during 1992, 1995 and 2004, it would make no difference in this case as to the computation of his AEDPA SOL since 1992 and 1995 are before his SOL even started to run, and 2004 is seven (7) years after his SOL had already expired.

Thus, we find that Petitioner's judgment of sentence became final on August 20, 1986, ninety (90) days after the Pennsylvania Supreme Court denied his Petition for Allowance of Appeal regarding his judgment of sentence.  Since this date was prior to the enactment of the AEDPA, Petitioner's SOL began on April 23, 1996.  *Burns, supra*.  We have found that Petitioner's SOL ran one full year from April 23, 1996 to April 23, 1997.  The AEDPA SOL was not tolled for this time period, and it ran uninterrupted until April 23, 1997.  There was no tolling of Petitioner's SOL during this period, since he did not have any further appeals properly filed challenging his judgment of sentence pending  in the state courts.  Thus, his SOL ran for one complete year after April 23, 1996.  In total, nine (9) years and nine (9) months ran before Petitioner filed his first federal habeas petition.  It is well out of time.

We do not find that Petitioner is entitled to any statutory tolling for the entire one-year period after the enactment of the AEDPA since he had no state court appeals, either direct or collateral, pending.  Petitioner seems to claim that his habeas petition was filed within 12 months of the May 1, 2006  Order of the Pennsylvania Supreme Court, and that some of the years after the end of his first round of state court appeals should be excused since he was mentally incompetent, *i.e.* 1992, 1995 and 2004.  (Doc. 1, p. 8).  Petitioner neglects the fact that his SOL was not tolled at all from the date that his SOL began to run on April 23, 1996 until April 23, 1997, the date when it expired.  Based on the Petitioner's undisputed state court record, we find that Petitioner's one-year AEDPA statute of limitations expired long before he filed his FIRST Habeas Petition.

As stated, Petitioner did not file his 2254 habeas petition until January 23, 2007.  Petitioner's AEDPA statute of limitations expired April 23, 1997.   Thus, we find that nine (9) years and nine (9) months  ran before Petitioner filed the FIRST Habeas Petition and that Petitioner's one-year statute of limitations expired.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L.No. 104-132, 110 Stat. 1214 (April 24, 1996), which modified the procedures for habeas corpus proceedings in federal court.  As stated, the AEDPA revised the standard of review for cases challenging state convictions pursuant to 28 U.S.C. § 2254. *Dickerson v. Vaughn*, 90 F.3d 87, 89 (3d Cir. 1996).  Title I of the Antiterrorism Act consists of the Habeas Corpus Reform Amendments (1996 Amendments).  The 1996 amendments apply to cases pending on or after the date of enactment.

The amended provisions of § 2244(d)(1) impose additional limitations on the right to pursue federal habeas relief. The amendments impose a one-year statute of limitations. As noted above, there are four potential starting points for determining when the statute of limitations begins to run. The applicable period in the instant matter is the effective date of the AEDPA since the date Petitioner's conviction became final on August 20, 1986, was well before the date of enactment of the AEDPA. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998); *Douglas, supra,* at *2; *Merritt v. Blaine*, 326 F.3d 157 (3d Cir. 2003). As noted above, any time devoted to pursuing a properly filed application for state post-conviction relief or other collateral relief is excluded from the limitations period. 28 U.S.C. § 2244(d)(2); *Merritt, supra*. The Petitioner's SOL commenced on April 23, 1996 and it expired an April 23, 1997. As stated above, Petitioner untimely filed a collateral appeal on September 16, 2004, his PCRA Petition, *i.e.* a Post Conviction Relief Act ("PCRA") Petition pursuant to 42 Pa.C.S.A. § 9541, *et seq. See* 42 Pa.C.S.A. §9545 (Petitioner had one year after the conclusion of his direct review of his judgment of sentence to file a PCRA Petition).

As the Petitioner's judgment became final before the enactment of the AEDPA, he had one year from April 23, 1996, to file his petition for writ of habeas corpus in federal court. *See Burns, supra; Douglas, supra*. The SOL ran from April 23, 1996 until April 23, 1997. Even if Petitioner properly filed his PCRA Petition on September 16, 2004, his SOL was long expired at this time. Thus, the statute began to run on April 23, 1996, and it ran uninterrupted until April 23, 1997, since Petitioner did not file any further state court appeals during this time with respect to his

judgment of sentence.[17]

Thus, the statute of limitations expired long before Petitioner filed his first Habeas Petition. Therefore, the statute of limitations ran for well over nine years (*i.e.* nine (9) years and nine (9) months) before the present habeas filing. Consequently, the present Habeas Petition is out of time.

In this case, the Petitioner is clearly out of time, as he did not file his present federal Habeas Corpus Petition until January 23, 2007, well after the expiration of the one-year time period. Accordingly, it will be recommended that the Petition be dismissed as untimely unless the statute of limitations is found to have been equitably tolled.

The Court must now decide if the doctrine of equitable tolling excuses the Petitioner's failure to abide by the time limitations of the AEDPA. The one-year AEDPA filing deadline is subject to equitable tolling. *See Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001); *Merritt v. Blaine*, 326 F. 3d 157 (3d Cir. 2003).[18]   *See also Shipe, supra,* at * 3. As the

---

[17]The statute of limitations ran continuously from April 23, 1996 until April 23, 1997, since no properly filed appeal was pending during this time.

[18]In *Merritt*, 326 F. 3d at 168, the Third Circuit stated:

> This court has held that the AEDPA statute of limitations is subject
> to the doctrine of equitable tolling. *Fahy,* 240 F.3d at 244. Equitable
> tolling is available " 'only when the principle of equity would make
> the rigid application of a limitation period unfair.' " *Id.* (quoting *Miller v.
> New Jersey Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998)). In *Fahy,*
> we restated the two general requirements for equitable tolling:
> (1) that "the petitioner has in some extraordinary way been prevented
> from asserting his or her rights;" and (2) that the petitioner has shown
> that "he or she exercised reasonable diligence in investigating and
> bringing [the] claims." *Id.*

Case 3:07-cv-00412-ARC   Document 8   Filed 05/01/07   Page 21 of 26

Court in *Musgrove v. Filion*, 232 F. Supp. 2d 26, 28 (E.D. N.Y. 2002), stated, "[t]he doctrine of equitable tolling is proper only in the 'rare and exceptional circumstances.' To invoke the doctrine, a petitioner must show that:

> (1) 'extraordinary circumstances prevented him from filing his petition on time;' and (2) he 'acted with reasonable diligence throughout the period he seeks to toll'." (Internal citations omitted).

We must look to the dismissal of the instant Habeas Corpus Petition to see if the equitable tolling doctrine should be invoked in this case. *Musgrove, supra*.

In this case, the Petitioner is clearly out of time, as discussed, since he did not file his present federal Habeas Corpus Petition until January 23, 2007, well after the expiration of the one-year AEDPA statute of limitations period. The Petitioner failed to timely file his present Petition.

We do not find extraordinary circumstances in this case which prevented the Petitioner from filing a timely habeas petition. Petitioner does not show any reason for the one-year delay from April 23, 1996 until April 23, 1997. Petitioner does not claim to have been mentally incompetent during this time period. Petitioner had no appeal pending at this time. Petitioner then inexplicably waited nine (9) years and nine (9) months, from April 23, 1997 until he filed his Habeas Petition on January 23, 2007. This delay, as discussed, rendered Petitioner's Habeas filing well beyond the one-year statute of limitations. Petitioner has not proffered any acceptable reason for the stated delay in filing the present Habeas Petition. We do not find that Petitioner has in some way been extraordinarily prevented from asserting his claims or that he used reasonable diligence in bringing his claims.

As in *Shipe, supra,* we find no evidence that our Petitioner was actively misled by the state. Petitioner was well-aware of his first habeas claim claim challenging his murder conviction when he filed his direct appeal with the Superior Court of his judgment of sentence.  (Doc. 7, Ex. 8). Petitioner was aware of his claim that the evidence at trial was not sufficient to support a second degree murder conviction based on his argument that it was not shown that he was engaging in the commission of felony when the victim died.  Petitioner claimed that the evidence at trial that showed he stole items from the victim's apartment after the killing was unrelated criminal conduct. The Pennsylvania Superior Court, in its July 19, 1985 Memorandum, soundly rejected Petitioner's argument.  The Court found that the evidence showed that Petitioner had prior intent to rob the victim, which considered with the evidence that Petitioner stole the victim's property, provided the jury with enough evidence to prove beyond a reasonable doubt that the victim's death occurred while Petitioner was robbing the victim.  The Court concluded that this evidence supported Petitioner's second degree murder conviction.  Petitioner also raised this claim with the CCP in his post-trial motions.  (Doc. 7, Ex. 9).  The CCP stated that "[t]he record discloses the killing of one, Jack Vance, at his residence by the Defendant [Petitioner ], both of whom had been involved in a homosexual encounter and the removal of items from the home of the victim after the commission of the homicide." (*Id.*, p. 1, CCP's March 15, 1984 Opinion).  Petitioner did not seem to raise his *Batson* claim (habeas Claim # 2)  until he filed his untimely September 2004 PCRA Petition.  (Doc. 7, Ex. 4).[19]

---

[19]Petitioner's second *Batson* claim (habeas Claim #2) raised in his habeas petition does not appear to have been exhausted in state court.  Notwithstanding this lack of exhaustion of Claim #2, Petitioner's habeas petition is untimely and should be dismissed.

Petitioner offers no acceptable explanation for the over eight-year delay that occurred after his SOL began to run (April 1996) until he filed his PCRA petition (September 2004).  More importantly, Petitioner offers no acceptable explanation as to why he could not timely file his federal habeas petition after his SOL began to run on April 23, 1996, until April 23, 1997.  Nor do we find that the Petitioner acted with reasonable diligence between this stated time period, and particularly between the time of April 23, 1996, until April 23, 1997, *i.e.*, the time when Petitioner could have filed his habeas petition with this Court within the AEDPA statute of limitations.

Further, as stated, there is simply no claim by Petitioner that he was actively misled or that he timely asserted his rights in the wrong forum.  In *Hubley v. Superintendent, SCI Camp Hill*, 57 Fed. Appx. 927, 2003 WL 77260 at * 6 (3d Cir.), the Court stated that:

> "[E]quitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair."  *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (internal quotations omitted).  "Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.'" *Id.* (Quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380 (3d Cir. 1994)).  The "petitioner must 'show that he or she exercised reasonable diligence in investigating and bringing [the] claims.' . . . Mere excusable neglect is not sufficient." *Robinson v. Johnson*, 313 F.3d 128, 142 (3d Cir. 2002) (quoting *Miller*, 145 F.3d at 618-19 (internal quotations omitted)).

Petitioner pursued his only available means of collateral relief with respect to his second degree murder conviction, *i.e.* his PCHA Petition, and  there is no evidence that he was actively misled by the state into erroneously believing  that he had one year after his untimely September

2004 PCRA petition was finally denied to file his federal habeas petition.  Based on the above reasons, we find that the Petitioner has failed to show extraordinary circumstances or that "the principles of equity would make the rigid application of a limitation period [§ 2241(d)(1)] unfair." *Miller,* 145 F. 3d at 618.  Thus, equitable tolling of the AEDPA statute of limitations is not warranted in this case.

**V.  Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petitioner's two identical Petitions for Writ of Habeas Corpus, Civil Nos. 07-0412 and 07-0706, be consolidated, and that case No. 07-0706 be closed.  We also recommend that the consolidated Petition for Writ of Habeas Corpus be dismissed, as it is untimely pursuant to 28 U.S.C. §2244(d)(1)(A).   Further, we recommend  that Petitioner's Motion for Appointment of Counsel filed in Case No. 07-0706 (Doc. 2) be dismissed as moot.


**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**


**Dated: May 1,  2007**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY STEPHENS, | : | CIVIL ACTION NO. **3:CV-07-0412** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN JAMES T. WYNDER, et al., | : | |
| | : | |
| Respondents | : | |

--------------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| GREGORY STEPHENS, | : | CIVIL ACTION NO. **3:CV-07-0706** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN JAMES T. WYNDER, et al., | : | |
| | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **May 1, 2007.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the

portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


                                                       **s/ Thomas M. Blewitt**
_____     **THOMAS M. BLEWITT**
                                                 **United States Magistrate Judge**


**Dated: May 1, 2007**