IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GREGORY STEPHENS,                  :        CIVIL ACTION NO. **3:CV-07-0412**
                                   :
              Petitioner           :        (Judge Caputo)
                                   :
              v.                   :        (Magistrate Judge Blewitt)
                                   :
WARDEN JAMES T. WYNDER, et al.,    :
                                   :
              Respondents          :

## REPORT AND RECOMMENDATION

## I. Background.

_____On March 5, 2007, Petitioner Gregory Stephens, an inmate at the State Correctional Institution at Dallas, Dallas, Pennsylvania, ("SCI-Dallas") filed, *pro se*, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Middle District of Pennsylvania.  (Civil No. 07-0412, M.D. Pa.).  Petitioner paid the filing fee.  On January 23, 2007, Petitioner Stephens filed, *pro se*, a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, in the United States District Court for the Eastern District of Pennsylvania (Civil No. 07-0295 (E.D. Pa.)), which was identical to his habeas petition he filed in the Middle District of Pennsylvania. Petitioner paid the filing fee in his Eastern District of Pennsylvania case.

On April 11, 2007, the District Court in the Eastern District of Pennsylvania issued an Order transferring Petitioner Stephens' case filed in that District (*i.e.*, Civil No. 07-0295, E.D. Pa.) to the Middle District of Pennsylvania.  This transferred habeas petition of Petitioner was received by the Middle District of Pennsylvania on April 16, 2007, and was docketed to Civil No. 07-0706, M.D. PA.  Both of Petitioner's habeas cases were assigned to the undersigned for pre-trial matters

pursuant to 28 U.S.C. § 636(b)(1)(B).

Since both of Petitioner's cases were identical habeas petitions challenging his 1983 Dauphin County Court of Common Pleas ("CCP") second degree murder conviction and life sentence, the Court, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, consolidated Petitioner's case Civil No. 07-0706, M.D. Pa., with his case Civil No. 07-0412, M.D. Pa., and closed 07-0706 case.

Also, Petitioner filed a Motion for Appointment of Counsel, an Affidavit and support Brief. This Motion and supporting documents were docketed in the Middle District of Pennsylvania case, No. 07-0706 as Doc. 2. Since Petitioner did not file such a Motion in his Case No. 07-0412, we addressed it in our consolidated Report and Recommendation ("R&R"). Petitioner's Motion for Appointment of Counsel has been stayed by the District Court until it decides whether Petitioner's AEDPA Statute of limitations ("SOL") should be equitably tolled.[1]

On May 1, 2007, we issued an R&R in which we recommended that the Petitioner's two identical Petitions for Writ of Habeas Corpus, Civil Nos. 07-0412 and 07-0706, be consolidated, and that case No. 07-0706 be closed. We also recommend that the consolidated Petition for Writ of Habeas Corpus be dismissed as untimely pursuant to 28 U.S.C. § 2244(d)(1)(A). Further, we recommended that Petitioner's Motion for Appointment of Counsel filed in Case No. 07-0706 (Doc. 2) be dismissed as moot. (Doc. 8).

---

[1]Since we now find Petitioner's habeas petition should not be equitably tolled and shall recommend that it be dismissed as untimely, we shall also recommend that his stayed Motion for Appointment of Counsel be dismissed as moot.

On November 21, 2007, the District Court entered an Order directing Petitioner to forward his mental health history to the undersigned and recommitting this matter to the undersigned for further proceedings to determine whether the Petitioner's mental health history entitled him to equitable tolling of his AEDPA statue of limitations.  Specifically, the District Court noted that, "if Petitioner can demonstrate that his mental illness prevented him from managing his affairs and understanding and acting upon his legal rights, then this petition has been timely filed.  The Court will recommit the case to Magistrate Judge Blewitt for further proceedings regarding the Petitioner's mental health history." (Doc. 12, p. 11).

Petitioner then notified the Court, *via* a Motion for Mental Health Records (Doc. 14), that he did not possess his mental health records and that the PA DOC does not release copies of such records to inmates.  On December 7, 2007, this Court issued an Order directing the Clerk of Court to serve Respondents with a copy of Petitioner's Motion for Mental Health Records (Doc. 14), and directing Respondent Pennsylvania Attorney General to file a response to the Motion within ten (10) days of the date of the Order.  (Doc. 15).  After being granted an extension of time, Respondent Attorney General filed a Response to Petitioner's Motion for Production of his Mental Health Records. (Doc. 18).  Respondent indicated that the Pennsylvania Department of Corrections ("PA DOC") desired to assert executive privilege regarding the disclosure of Petitioner's psychological records to him since they contained sensitive matters about an inmate and disclosure was not in the public's best interest. (Doc. 18, p. 2). Respondent noted that, if the Court requested, the DOC would file a Declaration of DOC Secretary Beard in which he asserted executive privilege.  (*Id.*, p. 2, n. 1).  The Court issued an Order on January 2, 2008, and agreed with Respondent that the *in*

*camera* submission of Petitioner's psychological records by the DOC was sufficient to determine if Petitioner's mental disorders prevented him from timely filing his present Habeas Petition.  This Court indicated that it would  then make a recommendation to the District Court, pursuant to the District Court's November 21, 2007 Order (Doc. 12), as to whether Petitioner's AEDPA statute of limitations should be equitably tolled in this case, and if his mental illness prevented him from managing his affairs and understanding his legal rights.  Also, Petitioner  filed  a second Motion for Appointment  of  Counsel,  along  with  an Affidavit (Docs. 19  and  20) while  his  first Motion for Appointment of Counsel (Doc. 13) was still pending.  In its November 21, 2007 Memorandum and Order, the District Court stated that Petitioner's first Motion for Appointment of Counsel was suspended until this Court reviews Petitioner's mental health history.  (Doc. 12, p. 11).  Since Petitioner's first Motion for Appointment of Counsel was still pending and it was suspended, we dismissed Petitioner's second Motion as redundant and unnecessary.  (Doc. 21).

Subsequently, on January 17, 2008, in compliance with the Court's Order of January 2, 2008 (Doc. 21), Respondent Attorney General filed with the Court, *in camera*, Petitioner's mental health records.

In making our determination, as directed by the District Court, as to whether Petitioner's ability to timely file his Habeas Petition was affected by his depression and if he is entitled to equitable tolling, we found that the submissions of briefs by the parties would assist the Court.  Thus, on January 22, 2008, the Court directed Respondent and Petitioner to file briefs on the equitable tolling issue.  (Doc. 22).  Specifically, the Court ordered Respondent Attorney General to file a Response as to whether Petitioner's mental health history entitled him to equitable tolling

and prevented him from timely filing his Habeas Corpus Petition within the AEDPA statute of limitations.  The Court also stated that Petitioner may respond to the Attorney General's response ten (10) days after he is served with same.  After being granted an extension of time, Respondent District Attorney of Dauphin County filed a brief on February 2, 2008, in response to the Court's Order.  (Doc. 25).  To date, Petitioner did not file a response to Respondent's Brief, nor has he requested more time to do so.

## II.  Claims of Habeas Petition.[2]

In his consolidated habeas petitions, Petitioner challenges his 1983 second degree murder conviction in the Dauphin County Court of Common Pleas ("CCP").  Petitioner raises the following grounds: (1)  Insufficient evidence to prove guilt beyond a reasonable doubt; and (2) Ineffective assistance of counsel, in that trial counsel failed to raise the constitutional violations that the Commonwealth used improper jury practices when it discriminated against African-American jurors in its exercise of peremptory jury challenges during *voir dire*, *i.e.*, denial of right to fair and impartial jury.  As to Claim #1, Petitioner states that he was charged with murder generally, and since he was not charged with any felony and not charged with engaging in any felony when the death of the victim occurred, the jury could not have returned a verdict of second degree murder, *i.e.* felony murder.  Petitioner states that his Ex. A criminal complaint shows that he was only charged with murder generally.  Thus, Petitioner claims that he is actually innocent of second degree murder.

---

[2]We repeat Petitioner's claims from our initial R&R.

(Doc. 1, p. 9).  As Claim #2, Petitioner raises a *Batson*[3] challenge to his jury selection and states that the Commonwealth used its peremptory challenges to strike 6 out of the only 7 potential African American jurors on his jury panel solely based on their race.  As a result, Petitioner states that his jury of eleven (11) white jurors and only one (1) African American juror, and two (2) white alterative jurors, denied him his Sixth Amendment right to a fair and impartial jury trial.  Petitioner claims that his trial and appellate counsel failed to object at trial and failed to raise this claim on appeal.  (*Id.*, p. 10)._____

**III.  Discussion.____**

The District Court has found that when Petitioner filed his habeas petition in federal court on January 23, 2007,  this was almost 10 years after his AEDPA SOL expired.  The Court concluded that "Petitioner has missed the deadline to file this petition."  (Doc. 12, p. 7).

We now must determine if Petitioner's mental health conditions prevented him from timely filing his Habeas Petition.  As the District Court indicated in its November 21, 2007 Memorandum, Petitioner claimed in his objections to our initial R&R that he was "mentally incapacitated" from the years 1992 through 2004 due to his "severe mental depression," and that during this time period he did not have the mental ability to file a habeas petition.  (*Id.*, p. 9).

---

[3]*See Batson v. Kentucky*, 476 U.S. 79 (1986); *U.S. v. DeJesus*, 347 F.3d 500, 505 (3d Cir. 2003) ("the Equal Protection Clause must prevent prosecutors from using peremptory strikes to remove jurors on the basis of race.").

As the Court stated in *Wilson v. Stickman*, 2005 WL 1712385, * 2 (E.D.Pa. 2005):

> Equitable tolling may be appropriate under some circumstances, including "if the [petitioner] has in some extraordinary way been prevented from asserting his rights." *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999) (internal citations omitted). In *Nara v. Frank,* the Third Circuit held that "mental incompetence" may constitute an extraordinary circumstance. *Nara v. Frank,* 264 F.3d 310, 320 (3d Cir.2001), *overruled in part on other grounds, Carey v. Saffold,* 536 U.S. 214, 122 S.Ct. 2134, 153 L.Ed.2d 260 (2002). In that decision the Court ruled that mental incompetence is not a per se reason to toll a statute of limitations," but the "alleged mental incompetence must somehow have affected the petitioner's ability to file a timely habeas petition." *Id.* (internal citations omitted).
>
> In a recent decision, one court in this Circuit concluded that the Third Circuit "has never held that mental health problems,' an undefined and expansive category, constitutes a basis for equitable tolling ... A mental condition that burdens but does not prevent a prisoner from filing a timely habeas petition does not constitute an extraordinary circumstances warranting equitable tolling." *U.S. v. Harris,* 268 F.Supp.2d 500, 506 (E.D.Pa. 2003) (internal citations omitted) (Dalzell, J.). A determination of mental incompetence which has affected the ability to make a timely filing under AEDPA must be premised on the totality of the petitioner's circumstances." *Graham v. Kyler,* 2002 WL 32149019, at *4 (E.D.Pa.2002) (Giles, C.J.). *Id.* at *4. For example, depression, a serious mental illness, has been held to be a common fact of prison life and therefore not, without more, a sufficient basis for tolling."

We review Petitioner's mental health records submitted *in camera* by Respondents on January 17, 2008, as well as Respondents' Brief (Doc. 25).[4]  As the District Court instructed, we must consider Petitioner's mental health history and the totality of the circumstances of his mental health history during the relevant time period.  (Doc. 12, p. 10).  We must look to the specific facts surrounding Petitioner's mental health and determine if our Petitioner's alleged severe depression

---

[4]Since Petitioner's psychiatric records maintained by the DOC were submitted *in camera*, they were not docketed in this case and they do not have a docket number.

affected his ability to timely file his Habeas Petition. (*Id*.).  As the District Court stated, "[i]f the Petitioner's ability to file was affected by his depression, then he may be entitled to equitable tolling." (*Id*.).

Petitioner claims that, due to his severe mental depression, his mental incompetence continued after his AEDPA SOL began to run on April 24, 1996.  As Respondent DA states, the only relevant time period with respect to the "mental breakdown" which Petitioner alleges to have had is from April 24, 1996, *i.e.* when his AEDPA SOL began to run, through September 2004, when Petitioner filed a PCRA Petition. (Doc. 25, pp. 7-8).  Petitioner must show that his mental impairment rendered him unable to timely prepare his habeas petition.  Respondent DA states that Petitioner's DOC mental health records do not show a persistent state of mental incompetence from April 1996 through 2004.  (Doc. 25, p. 8).  Respondent DA states that, while Petitioner was sent to Farview State Hospital on several occasions, his stay was short-term, and at no time was he deemed incompetent. (*Id*.).

We agree with Respondents that Petitioner's mental impairments did not constitute extraordinary circumstances justifying equitable tolling with respect to his present untimely filing of his habeas petition.[5]

In 1996, Petitioner's DOC medical records indicate that he was undergoing medical psychotherapy and was being seen by a psychiatrist, Dr. Newman.  He was prescribed Sinequan.

---

[5]Since the Court has already determined that Petitioner is not entitled to statutory tolling of his AEPDA SOL, we do not address this portion of Respondent DA's Brief herein.  (Doc. 25, pp. 4-7).

He had a depressed mood, and follow-up care in the nature of counseling was recommended.  In May 1996, Petitioner reported to Dr. Newman that he felt comfortable and controlled by himself. At the end of May 1996, Petitioner's Sinequan was increased from 100 mg to 150 mg, and his medical psychotherapy was continuing.  In June 1996, Dr. Wawrose, another consulting psychiatrist with the DOC, reported that Petitioner was getting along well and that we has "stable."

Petitioner's medical psychotherapy continued in July and August 1996, and he was reported to be stable.  However, in August, Petitioner was depressed but was not suicidal, and his medication was increased to 175 mg, and later to 200mg.  In September 1996, Petitioner was doing fairly well.  A September 27, 1996 Progress Note stated:

> OBJECTIVE:   Mental Status: Cognition, pertinent, sequential and logical.  Pleasant and cooperative.  Insightful insofar as symptoms. No evidence of psychotic ideation, regression or behavior.  Affect, mild dysphoria, undercurrent of irritability. (Emphasis added).

> ASSESSMENT:        This individual continues to do well with the current level and type of psychiatric intervention.

In October 1996, Petitioner denied problems related to emotional distress, and his weekly counseling sessions and mental health contacts were deemed sufficient.  Petitioner was reported as doing well.  He was stable in November 1996, and in December 1996, he said he was "OK," and he was found to have no significant psychiatric symptoms.  In January 1997, Petitioner was released from restricted housing, and his medication was reduced by 50% to 100 mg.

In July 1997, Dr. Wawrose reported:

> His mental status reveals a middle aged black man with a life sentence who is rational and coherent.  He is laconic, and his affect is extremely blunted and flat.  He is not hallucinated or

9

delusional, but thoughts of suicide have entered his mind
in the past and he states he doesn't want to get like that
again.

No specific reasons for his depression could be elicited at this
point in terms of outside interpersonal relationships.

RECOMMENDATIONS:
1.  Sinequan 50 mg at 7 AM and hs po for 30 days.
2.  Refer to Dr. Ley for individual counseling for depression.

On July 28, 1997, Petitioner's medication was discontinued due to his poor compliance in

taking it and due to his failure to appear at some of his appointments for medical psychotherapy.

However, Petitioner's is medication was renewed in September 1997 at 75 mg. since he reported

to be suffering from insomnia and depression.

In October 1997, Dr. Wawrose reported:

His mood and affect appear slightly flattened and consistent with
depression.  I note no overt evidence of hallucinations or delusions.
He appears oriented to person, place, and date.  Remote and recent
memory is good, and <u>judgment appears to be adequate</u>. (Emphasis added).

A:      Dysthymia.

P:      1.  Sinequan (liquid) 150 mg hs po for 30 days.
        2.  Reschedule for 14 November 1997.

Petitioner was coherent and rational in November 1997.  Petitioner failed to appear for his

December 1997 appointment.

Petitioner was doing well in January 1998.  In January 1998, Dr. Wawrose reported:

S:      Stephens states he wants to discontinue his Sinequan.  He doesn't
need it since he got out of the RHU.

10

> O:     Rational and coherent.  Answers to questions are appropriate.   Still working on his art work.  No evidence of suicidal depression, hallucinations, or delusions.  Oriented to person, place and date. Judgment intact.
>
> A:     <u>No treatable psychiatric disorder currently</u>. (Emphasis added).
>
> P:     1.  Stop Sinequan.
>        2.  Do not routinely reschedule.

In August 1998, Petitioner was again placed in the RHU for a misconduct, and he reported feeling depressed.  In August 1998, Dr. Wawrose reported:

> Patient is rational and coherent.  He is moderately depressed in mood and affect.  No evidence of hallucinations, delusions, or suicidal ideas.  Oriented to person, place and date.  Remote and recent memory is good, and judgment is satisfactory.
>
> A:     Dysthymia.
>
> P:     1.  Sinequan (liquid) 100 mg HS PO for 30 days.

In September 1998, Dr. Wawrose reported:

> Patient is rational and coherent.  His answers to questions are appropriate and relevant.  His mood is one of depression.  He is not overtly hallucinated or delusional.  He is oriented to person, place, and date. Remote and recent memory is good, and judgment is satisfactory.
>
> A:     Adjustment disorder with depressed mood vs. dysthymia.
>
> P:     1.  Sinequan 150 mg HS PO for 30 days.

In  October 1998, Dr. Wawrose was on vacation.   In November 1998, Dr. Wawrose reported:

> Stephens seems to be doing well.  He is resting comfortably.  His depression appears to be ameliorating.  He requests his medicine be continued to prevent relapse.

11

O:      Patient is rational and coherent.  His answers to questions are appropriate.  Mood and affect normal.  No evidence of hallucinations, delusions, or suicidal ideas.  Oriented in all three spheres.  Remote and recent memory is good, and judgment is satisfactory.

A:      Depression.

P:      1.  Sinequan (liquid) 150 mg HS PO for 30 days.

In April 1999, Dr. Wawrose reported:

Patient is rational and coherent.  His affect is flat.  He shows evidence of psychomotor retardation and there is not much activity noted.  He is not hallucinated or delusional.  He is not suicidal.  He is oriented in all three spheres.  Remote and recent memory is good, and judgment appears satisfactory.

A:      Adjustment disorder with depressed mood.

P:      1.  Sinequan (liquid) 100 mg HS PO for 60 days.

In June 1999, Petitioner was doing well and Dr. Wawrose reported:

Patient is rational and coherent.  His answers to questions are relevant.  Mood and affect euthymic.  No evidence  of hallucinations or delusions.  Oriented to person, place and date.  Remote and recent memory good, and judgment appears to be satisfactory.

A:      Dysthymia.
        <u>No treatable mental disorder since patient is requesting medication be stopped</u>. (Emphasis added).

P:      1.  Do not routinely reschedule.
        2.  Cancel appointment for 25 June 1999.

Petitioner did not appear for his July 1998 medical psychotherapy appointment.

In August 1999, Dr. Wawrose reported:

Patient is rational and coherent.  His answers to questions are relevant.  His mood and affect are consistent with a mild to moderate

12

depression.  There is no evidence of hallucinations or delusions.  He is oriented in all three spheres.  Remote and recent memory is good, and judgment is satisfactory.

A:

P:     1.  Stop Zoloft.
       2.  Sinequan 75 mg HS PO for 30 days.

In September 1999, Dr. Wawrose reported:

Stephens states he is getting along well and he wants his medication stopped.

O:     Stephens appears to be resting comfortably.  He is rational and coherent.  He does not appear to be especially depressed.  His mood and affect are appropriate.  There is no evidence of anxiety attacks.  He is not hallucinated or delusional.  He is oriented to person, place, and date. Remote and recent memory is good, and judgment is adequate.

A:     <u>No treatable mental disorder at this time</u>. (Emphasis added).

P:     1.  Stop Sinequan.
       2.  Do not routinely reschedule.

In January 2000, Dr. Wawrose reported:

Patient is rational and coherent.  He appears very depressed. His voice is very soft.  At times he is barely audible.  He states he has a loss of appetite, difficulty sleeping, and feels sad.

There is no evidence of hallucinations or delusions.

He does not appear to be demented.  He is oriented in all three spheres.  Remote and recent memory, so far as I can tell, appear good. His judgment is intact.

A:     Dysthymia.

P:     1.  Paxil 20 mg HS PO for 30 days.
       2.  Reschedule for 4 February 2000.

13

> 3.  We discussed move to RHU in D Block for people
> who have drug problems.  Consider possible relocation to
> Intermediate Care Unit.

Petitioner had no treatable disorder in February 2000, and his Paxil medication was stopped.

In July 2000, Petitioner was back in the RHU.  In July 2000, Dr. Wawrose reported:

> Patient is rational and coherent.  His answers to questions are
> appropriate.  Mood and affect appropriate.  No evidence of
> hallucinations or delusions.  Oriented to person, place, and date.
> Remote and recent memory is good, and judgment is adequate.

> A:     Dysthymia.

> P:     1.  Vistaril 50 mg HS PO for 30 days.
>        2.  Reschedule for 11 August 2000.

Petitioner was rational and coherent, and his mood and affect were normal in August 2000, and he was put back on Sinequan and Trazodone, and Vistaril was stopped.

In September 2000, Dr. Wawrose reported no significant abnormalities in Petitioner's mental status, and he was rational and coherent, and his mood and affect were normal.

Petitioner remained rational and coherent in November 2000.

In December 2000, Dr. Wawrose reported:

> Patient is rational and coherent.  He does seem brighter.
> Mood and affect are appropriate.  No evidence of hallucinations or
> delusions.  Oriented to person, place, and date.  Remote and
> recent memory appropriate and judgment intact.

> A:     Dysthymia.

> P:     1.  Elavil 25 mg at 7 AM and 11AM and 50 mg HS PO for 60 days.
>        2.  Pericolace 2 HS PO for 60 days.
>        3.  Benadryl 50 mg HS PO for 60 days.
>        4.  Cancel appointment for 30 November 2000.

14

5.  Reschedule for 12 January 2001.

In January 2001, Dr. Wawrose reported:

Stephens states that he wants to stop all of his medications including his laxative.  I will do this at this point.

O:      <u>Stephens is doing well.  His mental status appears to be within normal limits</u> and he is to be transferred in the near future.

A:      <u>No treatable mental disorder</u>.  (Emphasis added).

P:      1.  Stop Elavil.

In February 2001, Petitioner was reported to be stable and not depressed.

Sometime in early 2001, Petitioner was transferred from SCI-Huntingdon to SCI-Dallas, his current place of confinement.  Dr. Kale began to treat Plaintiff at this time.

Petitioner reported feeling depressed in May 2001, but Dr. Kale's treatment notes do not show Petitioner had a significant mental impairment.

In July 2001 Petitioner reported to feel "drained," but it was reported that he did not come across as being depressed; rather, he seemed bored, and it was recommended that he look for a prison job.

In August 2001, Dr. Kale assessed Petitioner with adjustment disorder, and in September Petitioner had no new problems.  Petitioner was prescribed Benadryl.  Petitioner had no significant changes with respect to his mental condition in October 2001,  November 2001, and December 2001.  Petitioner was treated in January and February 2002, and we do not find any significant changes with respect to his mental condition noted.  Petitioner's medication was continued by Dr. Kale. Petitioner was treated in March, April, May and June 2002, and we do not find any significant

15

changes with respect to his mental condition noted during this time period by Dr. Kale.   His medication was continued.

In July 2002, Dr. Kale reported that Petitioner felt "good," but assessed him as having "MDD" and that as a result, he was not a good candidate for the Hep-C medication.   In August 2002 Petitioner was reported as having been non-compliant with his medication, but we do not find any significant changes with respect to his mental condition noted.   In September 2002, Petitioner was "feeling much better" and was painting.   In November 2002, Petitioner's GAF was 60.[6]

In February 2003, Petitioner reported to Dr. Kale he was "doing alright."   He had a full range of affect. He denied suicidal ideation.   In March 2003, Petitioner said he was "doing OK."   In April 2003, Petitioner stated he was "alright."   His affect was normal, he was calm and cognitive, and he had no delusions.   Petitioner's GAF remained at 60.   In May 2003, Petitioner sated he was "fine." He had a full range of affect.   In June 2003, Petitioner was "alright" and he was not on any medications.   His history of MDD was reported to be in remission.   In September 2003, Petitioner was "doing fine" and no new problems were reported.   In November 2003, Petitioner was "alright" and no new problems were reported.   His MDD was still noted to be "remitted."   In January 2004, Petitioner was "alright" and no new problems were reported. He had a full range of affect. The Treatment Plan was to continue with no medications for Petitioner.   In February 2004, Petitioner

---

[6]A Global Assessment of Functioning (GAF) score of 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision*, 34, Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR").

reported "I'm lovely," and no new problems were reported.   Petitioner was not on any psychotropic medications.   His MDD was still noted to be "remitted."   In April 2004, Petitioner said "I feel good."   Petitioner was not on any psychotropic medications, and no dysthymia and no anxiety were reported.   His affect was normal.

In May 2004, Petitioner said he was "OK," and no new problem were reported by Dr. Kale. Petitioner's affect was normal in August 2004, and Petitioner stated "I'm doing wonderful ... I passed my GED."   His sleep and energy were good.   His affect was normal.

In October 2004, Petitioner reported he was "lovely," and no new problems were reported. Petitioner was not on any psychotropic medications.   In December 2004, Petitioner reported "everything is lovely," and no new problems were reported.   Petitioner was not on any psychotropic medications.   His GAF was 55.[7]

As Respondent DA points out, in September 2004, Petitioner filed a PCRA petition, and he represented himself on appeal from the denial of this petition.   Also, as stated above, Petitioner had passed his GED in August 2004.   Thus, Petitioner was clearly mentally competent during this time.

The District Court stated that if the Court were to equitably toll Petitioner's SOL based on his mental health, the SOL would restart when Petitioner was competent to resume his state court appeals in 2004.   (Doc. 12, p. 10).   Based on the above detailed review of Petitioner's DOC mental health records and the reports of Dr. Wawrose and Dr. Kale, both treating psychiatrists, Petitioner was clearly not suffering from any persistent severe mental impairments from April 1996 through

---

[7]A Global Assessment of Functioning (GAF) score of 55 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

2004.  Petitioner was not significantly mentally incompetent on a persistent basis during this time period.  Petitioner's DOC mental health records belie his claim that he was.   Based on Petitioner's records and considering the totality of his circumstances, we find that Petitioner's mental condition did not affect his ability to timely file has habeas petition with this Court, and that his condition did not constitute extraordinary circumstances warranting equitable tolling.  As discussed, the doctors frequently noted that Petitioner was doing quite well despite his diagnosis of depression and dysthymia, and oftentimes he was not on any psychotropic medications.  It was also reported that Petitioner at times did not have any treatable mental conditions.

In light of the above discussion, we respectfully recommend that the Court find that Petitioner's mental condition, based on the totality of his circumstances and based on his DOC treatment records, did not constitute extraordinary circumstances warranting equitable tolling of his AEDPA statute of limitations to file the instant Habeas Petition.  Thus, we will recommend that Petitioner's Habeas Petition be dismissed as untimely.

**V.  Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petitioner's Petition for Writ of Habeas Corpus be dismissed, as it is untimely pursuant to 28 U.S.C. §2244(d)(1)(A).   Further, we recommend that Petitioner's Motion for Appointment of Counsel **(Doc. 13)** be dismissed as moot.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: February 27, 2008**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY STEPHENS, | : | CIVIL ACTION NO. **3:CV-07-0412** |
| | : | |
| Petitioner | : | (Judge Caputo) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| WARDEN JAMES T. WYNDER, et al., | : | |
| | : | |
| Respondents | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing

**Report and Recommendation** dated **February 27, 2008.**

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

Any party may object to a magistrate judge's proposed findings,
recommendations or report addressing a motion or matter described in
28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
disposition of a prisoner case or a habeas corpus petition within ten (10)
days after being served with a copy thereof.  Such party shall file
with the clerk of court, and serve on the magistrate judge and all
parties, written objections which shall specifically identify the
portions of the proposed findings, recommendations or report to which
objection is made and the basis for such objections.  The briefing
requirements set forth in Local Rule 72.2 shall apply.  A judge shall
make a *de novo* determination of those portions of the report or
specified proposed findings or recommendations to which objection
is made and may accept, reject, or modify, in whole or in part, the findings
or recommendations made by the magistrate judge.  The judge, however,
need conduct a new hearing only in his or her discretion or where
required by law, and may consider the record developed before the
magistrate judge, making his or her own determination on the basis
of that record.  The judge may also receive further evidence, recall

20

witnesses or recommit the matter to the magistrate judge with instructions.


                                    **s/ Thomas M. Blewitt**
            _____   **THOMAS M. BLEWITT**
                                    **United States Magistrate Judge**


**Dated: February 27, 2008**